In The United States District Court
For The Northern District of Texas
Lubbock Division

| | |
|---|---|
| Thomas John Boukamp,<br><br>    Movant/Defendant,<br><br>v.<br><br>United States of America,<br><br>    Respondent/Plaintiff. | Crim No. 5:20-cr-00165-H-BQ-1 |

**Memorandum of Law in Support of Motion to Vacate, Set Aside,
or Correct Sentence Pursuant to 28 U.S.C. § 2255**

    Thomas Boukamp would have pleaded guilty instead of going to trial if he knew that M.[1] "wanted nothing more to do with him." (Dkt No. 304-2 at 6–7). However, months into the case and in open court, Boukamp's counsel, Mr. John Mahoney, stated, "[F]or all we know, maybe she does love him still." (Dkt No. 221 at 150:9–10). When Boukamp finally proceeded to trial, he learned the truth: M. did not love him. Boukamp was visibly devastated at M.'s answer and paused the trial proceedings.

---

[1]     The minor victim in this case was identified by the pseudonym "Jane Doe" through much of the proceedings. Although she chose to use her real name at trial, the parties on appeal and the Fifth Circuit refer to her as "M." *United States v. Boukamp*, 105 F.4th 717, 723 n.1 (5th Cir. 2024). For purposes of these proceedings, Boukamp will continue to refer to the victim by the pseudonym "M."

The record shows that Mr. Mahoney failed to conduct a pretrial investigation and interview the victim and key witness. Had he done so, and reported to Boukamp M.'s anticipated testimony, Boukamp would have pleaded guilty.

## I. Introduction

At 22 years old, Boukamp was sentenced to spend the rest of his life in prison. Boukamp's pretrial attorneys, Mr. David Guinn and Mr. Mahoney, filed multiple last-minute continuances that led this Court to write of Mr. Mahoney, "counsel's strategic use of continuances and brinkmanship is transparent, and he is warned to be mindful of his ethical obligations as an officer of the Court." (ECF 118 at 7–8).

These protracted pretrial proceedings, combined with counsel's failure to investigate the material witness in this case, ultimately resulted in Boukamp proceeding to trial *pro se* on a 16-count Second Superseding Indictment.

After his conviction at trial, Boukamp was appointed counsel for sentencing. Facing a Guidelines sentence of life imprisonment, sentencing counsel argued that Boukamp's Autism Spectrum Disorder ("ASD") was cause for Boukamp's offense and that a downward variance would allow Boukamp the opportunity for "redemption." However, at no point did counsel address Boukamp's ability to be rehabilitated in support of a downward variance.

At the times when Boukamp was represented by counsel, such representation objectively fell below the standard guaranteed by the Sixth Amendment. Based on the following, the Court should find that Boukamp received ineffective assistance of counsel at the pretrial and sentencing stages of the underlying criminal proceedings.

The Court should promptly schedule this matter for an evidentiary hearing because Boukamp's claims are not conclusively refuted by the records of the case.

## II. Procedural History

### A. District Court Proceedings

#### 1. Pretrial Proceedings

On December 9, 2020, a federal grand jury sitting in the Northern District of Texas returned a five-count Indictment which charged Boukamp with: Count 1–Transportation of a Minor with Intent to Engage in Criminal Sexual Conduct, in violation of 18 U.S.C. § 2423(a); Count 2–Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b); Count 3–Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); Count 4–Receipt of Child Pornography, in violation of 18 U.S.C. § 18 U.S.C. § 2252(a)(2) and (b); and Count 5–Cyber Stalking, in violation of 18 U.S.C. § 2261A(2). (Dkt No. 6).

Boukamp was initially represented by attorney David M. Guinn. (Dkt No. 8). On March 10, 2021, Boukamp made his initial appearance and entered not guilty pleas to the charges contained in the Indictment. (Dkt Nos. 11, 12). Jury trial was originally set for May 10, 2021. (Dkt No. 14). On April 19, 2021, Boukamp moved to continue trial. (Dkt No. 15). The motion was granted and trial was continued to July 12, 2021. (Dkt No. 16). A second continuance was granted on June 3, 2021, and trial was again continued to August 2, 2021. (Dkt No. 18). A little more than a month later, the Government moved to continue trial, and trial was continued a third time to August 9, 2021. (Dkt No. 35).

A Superseding Indictment was returned on July 14, 2021, which added additional forfeiture items. (Dkt No. 37). Defense counsel filed for another continuance on July 22, 2021. (Dkt No. 42). The Court denied the requested continuance on July 26, 2021. (Dkt No. 47).

Shortly after, Mr. Guinn filed a motion to suppress evidence obtained through cell site location information and a search of M.'s electronic devices. (Dkt No. 48). The motion was denied without a hearing based on the existence of exigent circumstances permitting a warrantless search of Boukamp's phone data and a lack of standing to challenge the search of M.'s electronic devices. (Dkt No. 51).

2. <u>Motion for Reconsideration, Competency Evaluation, and Second Superseding Indictment</u>

One day after the motion to suppress was denied, attorney Mark Mahoney moved to appear *pro hac vice* on Boukamp's behalf. (Dkt No. 52). Mr. Mahoney advertises his firm as "Specialized Autism Criminal Defense Attorneys" providing "Expert Autism Defense Legal Services."[2] On August 3, 2021, Boukamp filed for reconsideration of the denial of his motion to continue trial. (Dkt No. 60). For the first time in the proceedings, counsel represented that Boukamp's diagnosis with ASD necessitated the need for a 60-day trial continuance. *Id*.

On August 5, 2021, days before trial was set to begin, counsel filed a Motion for Competency Hearing on the basis that Boukamp's mental health rendered him unable to assist with his defense. (Dkt Nos. 75, 80). In its Response, the Government

---

[2] https://www.harringtonmahoney.com/autism-defense-attorney (last accessed Nov. 20, 2025).

was skeptical of the timing of the motion (noting it was filed the Thursday afternoon before trial was to begin on Monday) but conceded that the bar for a competency evaluation was low. (Dkt No. 76). The Government moved for a psychiatric exam to determine competency the following day. (Dkt No. 84).

The same day, the Court entered an order denying Boukamp's motion for reconsideration and a 60-day continuance of trial. (Dkt No. 85). In denying the motion, the Court noted that Boukamp had not moved for a competency hearing at the time the motion to reconsider was filed and only did so after learning of the Court's intention to deny reconsideration. *Id.* at 1, n.1, 4. Nonetheless, based on Boukamp and the Government's motions to determine competency, the Court ordered a competency evaluation and vacated the trial date. (Dkt Nos. 86, 87).

On October 13, 2021, a Second Superseding Indictment was returned which added 11 new counts. (Dkt No. 91). Count 6 alleged Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b); and Counts 7 through 16 charged Production and Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). *Id.*

The competency hearing was set for March 10, 2022. (Dkt No. 96). On March 7, 2022, Boukamp filed a motion to continue the hearing based on out-of-state counsel and defense experts' required travel arrangements and delayed evaluation efforts. (Dkt No. 99). The Court granted the motion, and the competency hearing was reset for May 3, 2022. (Dkt No. 101).

On April 28, 2022, days before the rescheduled competency hearing, Mr. Mahoney filed yet another motion to continue the competency hearing. (Dkt No. 116). Part of the grounds for seeking an additional continuance was the apparent scheduling conflict with each of the three expert witnesses expected to testify on Boukamp's behalf. *Id.* at 2–3. The Government opposed the continuance and noted what it viewed as "procedural gamesmanship" in seeking multiple last-minute continuances. (Dkt No. 117 at 2). The Government's opposition further discussed a recorded conversation between Boukamp and his father where it was stated that Mr. Mahoney wanted a continuance as part of a "bigger strategy." *Id.* at 2–3.

The Court entered an order denying the continuance the following day. (Dkt No. 118). After addressing each ground presented for a continuance, the Court further stated of Mr. Mahoney:

> For those reasons, which are independently sufficient, the Court denies Boukamp's motion to continue the competency hearing. But defense counsel's prior strategic and disruptive motion practice buttresses the Court's conclusion. This is not the first time defense counsel has filed a last-minute motion that impacts a long-scheduled proceeding. As noted above, defense counsel previously filed a last-minute motion for competency hearing on the eve of trial (Dkt No. 78), and he did so "only after learning that reconsideration [of trial continuance] would be denied." Dkt No. 85 at 10 n.4, 11. The Court noted the "suspect timing" of the motion. *Id.* at 8. Now, he files a second motion to continue the competency hearing mere days before that hearing, but he raises no meritorious grounds to do so. To the contrary, one of his stated reasons– the experts cannot travel for the hearing by Tuesday–is contradicted by his former motion for continuance, which represented that he needed more time to arrange travel. Defense counsel's strategic use of continuances and brinksmanship is transparent, and he is warned to be mindful of his ethical obligations as an officer of the Court.

*Id.* at 7–8.

The Court held the competency hearing as planned on May 3, 2022, and issued an order finding Boukamp competent to stand trial and properly able to assist in his defense. (Dkt No. 123).

### 3. Trial and Sentencing

After being found competent to stand trial, Boukamp appeared before the Court on May 4, 2022 for arraignment on the Second Superseding Indictment. (Dkt No. 125). However, the proceedings immediately turned into a *Faretta* hearing after Boukamp expressed his desire to discharge counsel and represent himself at trial. (Dkt No. 222 at 3). Following the *Faretta* questioning, Boukamp was permitted to proceed *pro se* with standby counsel.

Trial began on June 14, 2022, with Boukamp representing himself. Following a three-day trial, the jury returned guilty verdicts on all 16 counts of the Second Superseding Indictment. (Dkt No. 239). Boukamp requested appointment of counsel and Mr. Michael King was appointed as CJA counsel for sentencing.

The advisory Guidelines range called for a term of life imprisonment, based on the Guidelines as calculated under U.S.S.G. § 2G2.1 and grouping rules under U.S.S.G. § 3D1.4. Prior to sentencing, counsel filed a sentencing memorandum requesting a downward variance. (Dkt No. 273). Counsel argued that Boukamp's ASD diagnosis combined with the "Online Disinhibition Effect"[3] was cause for Boukamp's offense and a downward variance below life imprisonment was proper.

---

[3] A term coined by Professor John Suler. *See* John Suler, *The Online Disinhibition Effect*, THE PSYCHOLOGY OF CYBERSPACE, (Aug. 24, 2004), https://truecenterpublishing.com/psycyber/dishibit.html

Sentencing in Boukamp's case was held on October 20, 2022. The Court heard Boukamp's objections to the Guidelines calculations and overruled each one. (Dkt No. 291 at 10–19). After adopting the factual findings and Guidelines calculations contained in the PSR, the Court heard argument and allocution. Boukamp was ultimately sentenced to a term of life imprisonment. (Dkt No. 284). Boukamp filed a timely notice of appeal the following day. (Dkt No. 286).

**B.    Direct Appeal**

On appeal before the Fifth Circuit, Boukamp raised nine issues for consideration: (1) whether the Court erred in finding Boukamp competent to stand trial; (2) whether the Court made constitutionally impermissible remarks regarding Boukamp's decision not to testify in his own defense; (3) whether Boukamp's life sentence was substantively unreasonable; (4) whether the jury instructions on Counts One and Two were erroneous; (5) whether Boukamp's ability to cross-examine witnesses was limited in violation of the Fifth Amendment; (6) whether the Court erred in denying Boukamp's trial continuance; (7) whether the cumulative error doctrine warranted reversal; (8) whether the Court erred by requiring Boukamp to testify in question-and-answer format if he decided to testify at trial; and (9) whether the Court erred in permitting Boukamp to proceed *pro se* at trial.

On June 25, 2024, the Fifth Circuit entered its published opinion affirming Boukamp's conviction and sentence. *United States v. Boukamp*, 105 F.4th 717 (5th Cir. 2024). While the court of appeals did conclude that the jury instructions on

Counts One and Two may have been erroneous, it found those errors to be harmless as the evidence presented at trial was "overwhelming." *Id.* at 736.

With respect to Boukamp's sentencing claim, the Fifth Circuit noted that sentencing counsel did not raise Boukamp's ASD and age as mitigating factors except under the provision of 18 U.S.C. § 3553(a)(1). Specifically, the Fifth Circuit found:

> The bottom line is that, during the sentencing proceedings, Boukamp failed to raise the *Roper* line of cases, Drs. Montfort and Garcia's expert report, or any suggestion that autistic individuals have a particular likelihood for rehabilitation when it comes to sexual misconduct.

*Id.* at 738.

**C.  Supreme Court Proceedings**

Following the Fifth Circuit's decision on direct appeal, Boukamp filed a petition for writ of certiorari to the United States Supreme Court challenging the competency findings. The Supreme Court denied Boukamp's petition on November 25, 2024. *Boukamp v. United States*, 145 S.Ct. 595 (2024).

### III. Timeliness

This motion is timely pursuant to 28 U.S.C. § 2255(f)(1). For § 2255 purposes, Boukamp's judgment of conviction became final on November 25, 2024, when the United States Supreme Court denied his petition for writ of certiorari. *Boukamp v. United States*, 145 S.Ct. 595 (2024). Accordingly, this motion is timely if filed on or before November 25, 2025. *See Clay v. United States*, 537 U.S. 522 (2003).

### IV. Standard of Review

The Sixth Amendment guarantees effective assistance of counsel at all critical stages of the criminal proceeding. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). Claims of ineffective assistance of counsel are governed by the Supreme Court's

familiar two-prong test announced in *Strickland v. Washington*, 446 U.S. 668 (1984). The first prong of *Strickland* requires the defendant to show that counsel rendered "deficient" performance, meaning that counsel's performance fell "outside the wide range of professional competent assistance." *Id*. at 689. The second prong requires the defendant to demonstrate prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." *Id*.

The Supreme Court has long recognized that the right to effective assistance of counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 556 U.S. 156, 168 (2012). The Supreme Court has said that "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo." *Libretti v. United States*, 516 U.S. 29, 50–51 (1995). Effective assistance of counsel in this context requires making "a meaningful attempt to inform the defendant," of his options. *Missouri v. Frye*, 566 U.S. 134, 149 (2012). When a defendant proceeds to trial, the prejudice inquiry turns on whether there is a reasonable probability that, but for counsel's ineffectiveness, the defendant would have pleaded guilty rather than going to trial. *Lafler* 566 U.S. at 164.

## V. Argument

**1.     Counsel was ineffective for failing to investigate and interview the key witness; but for counsel's ineffectiveness, there is a reasonable probability that Mr. Boukamp would have pleaded guilty.**

It was no secret that Boukamp steadfastly believed that he and M. had a mutual romantic relationship that could still be salvaged despite the federal criminal proceedings. It was this belief that ultimately drove Boukamp's decision to proceed to trial and reject the Government's plea offer. However, if pretrial counsel had simply investigated and interviewed M. prior to trial, Boukamp would have been disabused of this notion. Had pretrial counsel properly investigated the Government's key witness and victim in this case and properly advised Boukamp as to her anticipated testimony at trial, Boukamp would have accepted the Government's plea offer of 15 to 30 years instead of proceeding to trial.

It is the touchstone of providing effective assistance that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. An attorney's failure to investigate and interview eyewitnesses to a crime can constitute "constitutionally deficient representation." *Bryant v. Scott*, 28 F.3d 1411, 1418 (5th Cir. 1994). In cases where an attorney fails to interview witnesses to a case and relies only on discussions with the defendant and the prosecutor's file, the Fifth Circuit has found that "information relevant to [the] defense might have been obtained through better pretrial investigation of the eyewitnesses, and a reasonable lawyer would have made some effort to investigate the eyewitnesses' testimony." *Id*; *Anderson v. Johnson*, 338 F.3d 382, 391 (5th Cir. 2003).

In Boukamp's case, the testimony of M. was the lynchpin in Boukamp's decision whether to go to trial or plead guilty. *See* Decl. of Thomas John Boukamp ¶ 21, attached hereto as an exhibit. Up until trial, Boukamp believed that M.'s testimony would contradict the Government's case-in-chief and be supportive of his defense. *Id.* ¶ 16. Boukamp's beliefs are supported by the record in this case, particularly the record on Boukamp's competency to stand trial. In its Memorandum Opinion and Order on Boukamp's competency, the Court noted Boukamp's "fixed beliefs about Doe," and how these beliefs are confirmed by recorded jail calls. (Dkt No. 207 at 17).

In addition, in the Affidavit in Support of Motion for Competency Hearing (Dkt No. 75-1), counsel explained Boukamp's belief that the case could be resolved with a meeting between the Court, M., and her father. *Id.* ¶ 12; *see also* Decl. of Boukamp ¶ 4. Simply put, Boukamp believed that M. loved him and the two could continue a relationship despite the federal charges. Moreover, Boukamp believed that if he went to trial, M.'s testimony would be favorable to him. However, at no time prior to trial did counsel interview M. to ascertain her version of the events or anticipated testimony–information that was crucial to Boukamp's decision to go to trial.

Unfortunately, Boukamp did not learn of the nature of M's testimony until trial was already into its second day. During Boukamp's cross-examination of M., the following exchange occurred:

Q. (By Mr. Boukamp) Did you mean it when you said you loved me?

A. Probably at the time, a little bit.

> Q. So do you have any love for me anymore?
>
> A. No.
>
> Mr. Boukamp: One moment, Your Honor.
>
> (PAUSE).

Dkt No. 257 at 498:3–9.

After M.'s answer that she did not love Boukamp, Boukamp visibly broke down in the courtroom. Decl. of Boukamp ¶ 19.

Had counsel interviewed M. before trial and told Boukamp what M.'s testimony would be at trial–including that she did not love Boukamp–Boukamp would not have proceeded to trial and would have accepted the Government's plea offer instead. Decl. of Boukamp ¶ 21–23.

Contemporaneous evidence from the competency evaluation supports Boukamp's claim. Dr. Kellaher's report indicated that Boukamp would plead guilty to all counts if he could have a 30-minute conversation with M., and that Boukamp had no interest in fighting his charges if M. "wanted nothing more to do with him." (Dkt No. 304-2 at 6–7). And during the competency hearing, Mr. Mahoney stated, "[F]or all we know, maybe she does love him still." (Dkt No. 221 at 150:9–10).

The record shows that counsel did not interview M., the victim and key witness, prior to trial. Had counsel done so, Boukamp would have been told that M. did not love him and does not want a future with him. Boukamp's decision to proceed to trial was premised entirely on his perceived relationship with M., and he has

previously stated that he would not fight his case if he knew that M. did not want a relationship with him.

Accordingly, counsel's failure to investigate and interview M. prior to trial was deficient performance. *Bryant*, 28 F.3d at 1418. Had counsel reasonably investigated, evidence supports that Boukamp would not have taken his case to trial, and he would have accepted the Government's plea offer of 15-30 years. As a result of counsel's ineffectiveness, Boukamp was sentenced to a term of life imprisonment.

Pretrial counsel's failure to investigate was objectively deficient performance that severely prejudiced Boukamp. Accordingly, the Court should find that Boukamp received ineffective assistance of counsel, vacate his conviction, and direct the Government to reoffer its prior plea agreement so that Boukamp can decide to accept it with competent assistance of counsel.

**2.    Mr. Mahoney's last-minute delays and requests for competency hearing were not reasonable and ultimately prejudiced Mr. Boukamp by leading to additional charges.**

Boukamp was initially indicted on December 9, 2020. (Dkt No. 6). This Court is already familiar with the numerous continuances and suspect timing of the requests. While pretrial motions to continue are typically routine, Mr. Mahoney's last-minute delays and grounds for seeking continuances resulted in the Court specifically warning counsel of his ethical obligations as an officer of the Court and called out counsel's use of continuances and brinksmanship as transparent. (Dkt No. 118 at 7–8).

Of particular importance is counsel's motion to reconsider continuance of trial and the motion for a competency evaluation filed mere days before trial (which had

already been continued multiple times). This resulted in the trial on a five-count Superseding Indictment being vacated and a 16-count Second Superseding Indictment being filed two months after trial would have already taken place. The additional 11 counts massively increased Boukamp's statutory sentencing exposure by 320 years imprisonment.[4]

Under typical circumstances, a duly sought continuance followed by a superseding indictment would not constitute an attorney error implicating the Sixth Amendment. However, the situation in Boukamp's case is far from typical. Most concerning is counsel's motion for a competency evaluation based primarily on Boukamp's ASD. As the Court previously noted, defense counsel did not file for a competency evaluation, nor indicate that one would be filed, until after the motion to reconsider was denied. What is more is the fact that the Government pointed out in its Response that it was attorney Mahoney that wanted the continuance and that it was all part of a "bigger strategy" according to a recorded jail call. (Dkt No. 117 at 2–3).

Any attempt to find Boukamp incompetent was doomed from the start and a transparent method of further delaying Boukamp's trial. To begin, at no time did Boukamp believe he was incompetent to stand trial and wholly disagreed with counsel's "strategy" to have him found incompetent. Decl. of Boukamp ¶¶ 12–13.

---

[4]   Count 6 carried a statutory penalty of up to 20 months imprisonment. Counts 7 through 16 were punishable by a minimum of 15 years to a maximum of 30 years imprisonment on each count.

In addition, as the Court is aware, Boukamp has above-average intelligence and showed no signs of being unable to comprehend the proceedings. While all the experts who testified at the competency hearing agreed that Boukamp showed signs of or had ASD, Boukamp has been unable to find any case where ASD alone was enough to prove incompetence. One case out of the Southern District of Florida particularly demonstrates just how high the threshold for incompetence based on ASD is. In *United States v. Rodriguez*, the defendant had been diagnosed with ASD and had an IQ of 73. *United States v. Rodriguez*, No. 14-20877-CR, 2015 WL 6964671, at *6–7 (S.D. Fla. Nov. 10, 2015). The court found that, notwithstanding the defendant's ASD diagnosis and low IQ, he was competent to stand trial. *Id*. at *14.

Conversely, while all the experts at the competency hearing agreed Boukamp at least showed signs consistent with ASD, he has an IQ in the 120s which is above average. Boukamp also demonstrated an uncontroverted understanding of the proceedings against him. In short, counsel's "strategy" of attempting to have Boukamp found incompetent was never going to succeed.

Had counsel not vacated trial for several months to obtain a competency hearing that was apparently solely meant for delay, Boukamp would have proceeded to trial before the Government sought and obtained a Second Superseding Indictment which added 11 more substantive counts. Counsel's delay and reasons for seeking a competency hearing were unreasonable under the circumstances, and these actions resulted in additional charges with substantially raised Boukamp's sentencing exposure by 320 years and further deteriorated any plea-bargaining position.

The Court should find that counsel's pretrial delays to be deficient performance that ultimately prejudiced Boukamp and grant § 2255 relief accordingly.

**3. Counsel's failure to argue Mr. Boukamp's likelihood for rehabilitation at sentencing was unreasonable, and Mr. Boukamp was sentenced to a term of life imprisonment at the age of 22.**

Boukamp was 20 years old at the time of his arrest. At the age of 22, Boukamp was sentenced to a term of life imprisonment. After his conviction at trial, Boukamp was appointed attorney Michael King to represent him at sentencing. Faced with an advisory Guidelines range of life imprisonment, Mr. King filed a sentencing memorandum advocating for a downward variance below life imprisonment. (Dkt No. 273). Sentencing counsel addressed Boukamp's diagnosis of ASD and how individuals with ASD gravitate toward the Internet to form relationships. *Id.* at 15–16.

Unfortunately, sentencing counsel made no arguments in his memorandum or at sentencing related to Boukamp's ability to be rehabilitated–a crucial consideration when the Guidelines call for a life sentence. Moreover, the Court rejected Boukamp's autism diagnosis as cause for his offense. (Dkt No. 291 at 52).

On appeal, Boukamp challenged the substantive reasonableness of his life sentence. *Boukamp*, 105 F.4th at 736–738. In his opening brief, a significant argument against the life sentence was related to *Roper v. Simmons*, 543 U.S. 551, 569 (2005) and its progeny. (Br. of Appellant; Doc. 79-1; at 72–76; No. 22-11035). Citing to *Roper* and *Graham v. Florida*, 560 U.S. 48, 69 (2010), Boukamp argued that while he is an adult, he is not a neurotypical one. *Id.* at 73. Boukamp pointed to evidence in the record that his ability to understand social communication and to communicate with others is equivalent to that of a 5- to 7-year-old. *Id.* Boukamp

further argued that individuals with autism can improve especially when in terms of sexual misconduct, citing to Dr. Montfort and Dr. Garcia's expert reports. *Id.* at 74.

However, the Fifth Circuit aptly noted in its decision that this Court "was never asked to consider this evidence as part of its sentencing decision because Boukamp never raised it." *Boukamp*, at 738. The court of appeals further noted that while the sentencing memorandum and argument at sentencing focused extensively on Boukamp's autism diagnosis, it only did so with respect to 18 U.S.C. § 3553(a)(1) and not § 3553(a)(2)(C). *Id.* On the sentencing issue, the Fifth Circuit concluded:

> The bottom line is that, during the sentencing proceedings, Boukamp failed to raise the *Roper* line of cases, Drs. Montfort and Garcia's expert report, or any suggestion that autistic individuals have a particular likelihood for rehabilitation when it comes to sexual misconduct. And Boukamp has not convinced us that the district court committed plain error in failing to do so of its own accord.

*Id.*

Sentencing counsel's failure to raise these arguments in the first instance before the Court was deficient performance. Given Boukamp was facing an advisory Guidelines range of life imprisonment, addressing each of the § 3553(a) sentencing factors–especially the need to protect the public and the ability for rehabilitation– was crucial to providing effective assistance of counsel at sentencing. Instead, counsel focused almost entirely on § 3553(a)(1) and ASD as cause for the offense rather than how Boukamp could be effectively treated and rehabilitated so that he could one day lead a normal life outside of prison.

The prejudice caused by sentencing counsel's deficient performance is twofold. First, as the Fifth Circuit noted, the Court was not asked to consider these

nonfrivolous arguments in mitigation for a below-the-Guidelines sentence. There is at least a reasonable probability that had sentencing counsel made the same arguments in the first instance before the Court, Boukamp would have received a sentence less than life. *See United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004) (any amount of additional jail time is sufficient to demonstrate prejudice); *Glover v. United States*, 531 U.S. 198, 203.

Second, had sentencing counsel preserved these arguments before this Court but Boukamp still received a life sentence, then the arguments on appeal would not have been reviewed for plain error. *United States v. Fraga*, 704 F.3d 432, 441 (5th Cir. 2013) (arguments not raised at sentencing are reviewed for plain error only). There stands a reasonable probability that Boukamp's arguments on appeal would have been granted under a less onerous standard of review.

Accordingly, Boukamp received ineffective assistance of counsel at sentencing that resulted in prejudice and ultimately a life sentence. The Court should grant Boukamp's 28 U.S.C. § 2255 motion and order Boukamp be resentenced with the close assistance of competent counsel.

### VI. Evidentiary Hearing

An evidentiary hearing on a § 2255 motion is required "unless either (1) the movant's claims are clearly frivolous or based upon supported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019) (quoting *United States v. Harrison*, 910 F.3d 824, 826–27 (5th Cir. 2018)); *see also* 28

U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing[.]").

Mr. Boukamp has alleged nonfrivolous claims of ineffective assistance of counsel that, if true, entitle him to § 2255 relief. Accordingly, the Court should schedule this matter for an evidentiary hearing.

### VII. Conclusion

Mr. Boukamp respectfully prays that the Court grant 28 U.S.C. § 2255 relief accordingly.

                                            Respectfully submitted,

                                            /s/ Zachary L. Newland
                                            Zachary L. Newland
                                            Newland Legal, PLLC
                                            P.O. Box 3610
                                            Evergreen, Colorado 80437
                                            Tel: (303) 948-1489
                                            Email: zach@newlandlegal.com

                                            *Counsel for Thomas Boukamp*