IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

THOMAS JOHN BOUKAMP,
          Movant,

v.

UNITED STATES OF AMERICA,
          Respondent.

No.    5:25-CV-00259-H
       (5:20-CR-165-H-BQ-1)

## **RESPONSE TO MOTION UNDER 28 U.S.C. § 2255**

Respectfully submitted,

Ryan Raybould
United States Attorney

*s/ Lauren C. Murphree*
Lauren C. Murphree
Assistant United States Attorney
Texas Bar No. 24085059
1200 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: (806) 472-7322
Lauren.murphree@usdoj.gov

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES................................................................................iv

RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 ......................................1

STATEMENT OF THE CASE .............................................................................1

STATEMENT OF THE ISSUES ..........................................................................2

STATEMENT OF FACTS ....................................................................................2

      1.     Boukamp uses online sites to harass and terrorize a 13-year-old girl (M.)— exacerbating her depression to the point of a suicide attempt and resulting in him picking her up from school and taking her to Michigan, where he rapes, strangles, and abuses her.....................................................................2

      2.     Investigators find M. at Boukamp's lake house, and a grand jury ultimately charges him with 16 counts. .........................................................................3

      3.     Boukamp's attorneys move to continue trial to have Boukamp's competency to stand trial evaluated. ...........................................................4

      4.     A jury convicts Boukamp on all 16 counts and this Court sentences him to life imprisonment. .......................................................................................7

ARGUMENT AND AUTHORITIES ...................................................................9

      1.     Boukamp fails to show deficient performance or prejudice in claiming that his retained counsel was ineffective for failing to interview the victim before trial. (Ground One)........................................................................11

           A.     Boukamp fails to show deficient performance.................................11

           B.     Boukamp fails to show prejudice.....................................................14

      2.     Boukamp fails to show that his trial counsel performed deficiently by requesting trial continuances and a competency hearing or that those actions prejudiced him. (Ground Two) ......................................................18

**Page**

3.    Boukamp did not perform deficiently at sentencing by failing to advocate for the likelihood of Boukamp's rehabilitation, nor can Boukamp show prejudice because of the alleged failure.  (Ground Three)..........................21

CONCLUSION ...............................................................................................24

CERTIFICATE OF SERVICE.............................................................................24

## TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990) .................................................. 18, 19

*Boukamp v. United States*, 154 S. Ct. 595 (2024) ............................................................ 1

*Brigham v. Cockrell*, 2002 WL 1776933 (N.D. Tex. July 29, 2002)................................ 15

*Cotton v. Cockrell*, 343 F.3d 746 (5th Cir. 2003) ............................................................ 12

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ...................................................................... 10

*Drope v. Missouri*, 420 U.S. 162 (1975) ......................................................................... 18

*Frank v. Blackburn*, 646 F.2d 873 (5th Cir. 1980)........................................................... 20

*Harrington v. Richter*, 562 U.S. 86 (2011)........................................................... 10, 11, 12

*Lafler v. Cooper*, 566 U.S. 156 (2012)............................................................................. 14

*Martin v. United States*, 2019 WL 3976272 (N.D. Tex. June 28, 2019) .......................... 12

*Massaro v. United States*, 538 U.S. 500 (2003) ................................................................. 9

*Mays v. Stephens*, 757 F.3d 211 (5th Cir. 2014) .............................................................. 18

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000).............................................................. 10

*Missouri v. Frye*, 566 U.S. 134 (2012)............................................................................. 14

*Navarrette v. United States*, 2013 WL 12351153 (W.D. Tex. Dec. 13, 2013) ................ 16

*Padilla v. Kentucky*, 559 U.S. 356 (2010)........................................................................ 10

*Roper v. Simmons*, 543 U.S. 551 (2005) .......................................................................... 23

*Sandoval Mendoza v. Lumpkin*, 81 F.4th 461 (5th Cir. 2024) ......................................... 22

*Strickland v. Washington*, 466 U.S. 668 (1984).........................................................passim

*Trottie v. Stephens*, 720 F.3d 231 (5th Cir. 2013) ........................................................... 12

*United States v. Boukamp*, 105 F.4th 717 (5th Cir. 2024) ............................................ 1, 20

*United States v. Caldwell*, 750 F.2d 341 (5th Cir. 1984) ................................................. 15

iv

**Federal Cases, continued**                                               **Page(s)**

*United States v. Cisneros*, 2023 WL 8433978 (5th Cir. Dec. 5, 2023) ................ 14, 15, 17

*United States v. Felice*, 272 F. App'x 393 (5th Cir. 2008) .................................................. 19

*United States v. Frady*, 456 U.S. 152 (1982) ......................................................................... 9

*United States v. Hughes*, 635 F.2d 449 (5th Cir. Unit B Jan. 1981) ................................ 11

*United States v. Millet*, 559 F.2d 253 (5th Cir. 1977) ........................................................ 19

*United States v. Placente*, 81 F.3d 555 (5th Cir. 1996) ........................................................ 9

*United States v. Reed*, 719 F.3d 369 (5th Cir. 2013) .......................................................... 11

*United States v. Soape*, 169 F.3d 257 (5th Cir. 1999) ........................................................ 15

*United States v. Stewart*, 207 F.3d 750 (5th Cir. 2000) ............................................... 10, 11

*Yarborough v. Gentry*, 540 U.S. 1 (2003) ......................................................................... 11

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Thomas John Boukamp seeks to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel before trial and at sentencing. (CV No. 1.)[1] Boukamp's claims are meritless, easily refuted by the record, and should be summarily denied as explained below.

## STATEMENT OF THE CASE

After cycling through a handful of attorneys, Boukamp elected to represent himself at trial, where a jury found him guilty of sixteen counts: transportation of a minor with intent to engage in criminal sexual conduct (Count One); travel with intent to engage in illicit sexual conduct (Count Two); attempted enticement of a minor (Count Three); receipt of child pornography (Counts Four and Six); cyber stalking (Count Five); production/attempted production of child pornography (Counts Seven-Sixteen). Boukamp then waived his right to self-representation, (CR No. 258 at 138), received appointed counsel for sentencing, (CR No. 248), and this Court ultimately sentenced him to life in prison, (CR No. 291 at 53-54).

The Fifth Circuit affirmed this Court's judgment on June 25, 2024, *see United States v. Boukamp*, 105 F.4th 717 (5th Cir. 2024), and the Supreme Court denied certiorari on November 25, 2024, *see Boukamp v. United States*, 154 S. Ct. 595 (2024). On November 24, 2025, Boukamp timely filed a motion to vacate under 28 U.S.C. § 2255. (CV No. 1.)

---

[1] "CV No. __" refers to the docket number of this Section 2255 action. "CR No. __" refers to the docket number of the underlying criminal proceeding, *United States v. Boukamp*, 5:20-CR-165-H-BQ-1 (N.D. Tex.). "PSR" refers to the presentence report, which is docketed at CR No. 269-1.

## STATEMENT OF THE ISSUES

Boukamp claims that his retained counsel provided constitutionally ineffective assistance before trial by: (1) failing to investigate and interview the victim, (CV No. 1 at 4) (Ground One); and (2) requesting a competency evaluation and multiple continuances of the trial setting, (CV No. 1 at 5) (Ground Two).   He also alleges that his appointed counsel provided constitutionally ineffective assistance at sentencing by failing to argue Boukamp's likelihood of rehabilitation, (CV No. 1 at 7) (Ground Three).

## STATEMENT OF THE FACTS

**1.    Boukamp uses online sites to harass and terrorize a 13-year-old girl (M.)— exacerbating her depression to the point of a suicide attempt and resulting in him picking her up from school and taking her to Michigan, where he rapes, strangles, and abuses her.**

Boukamp preyed on a 13-year-old girl (M.)[2] suffering from depression and a difficult life at home.  From a computer in Michigan, he found her online, tortured her psychologically and emotionally, and blackmailed her with explicit photos and videos she sent him.  (CR No. 257 at 195-96, 198-202.)  M. attempted suicide, but even that did not stop Boukamp.  (CR No. 256 at 121-22.)  He continued to prey upon her until she became resigned to his harassment and agreed to leave her home with him.  (CR No. 256 at 199; CR No. 257 at 199-220.)  He devised a plan, had her leave a fake note saying she was running away to California, and traveled from Michigan to Lubbock, Texas to get her. (CR No. 257 at 208-13.)

---

[2] Although the minor victim is referred to as Jane Doe in various pleadings, and by her real name at trial, the government will refer to her as "M." for consistency with Boukamp's motion.  (CV No. 1-1 at 1 n.1.)

On November 13, 2020, M. went to her middle school with some extra clothes and her baby blanket in her backpack.  (CR No. 257 at 210.)  But, instead of going home that day, Boukamp met her outside, and the two headed for Michigan.  (CR No. 257 at 211-12.)  M. gave Boukamp oral sex the first night, and things spiraled from there—with Boukamp raping her, strangling her, and abusing her in depraved ways.  (CR No. 257 at 212-14.) During the nine days M. was in Michigan, Boukamp had sex with her multiple times per day.  (CR No. 257 at 213-14.)  In one instance, Boukamp penetrated M. with a turkey baster that had garlic and water inside because he told her that her vagina smelled bad.  (CR No. 257 at 214-15.)  During another, he penetrated her with the ceramic handle of a knife and a spoon and strangled her.  (CR No. 257 at 215.)  He even used pliers to remove her braces.  (CR No. 257 at 215.)

Put simply, Boukamp brutally abused M. sexually and otherwise.  (CR No. 257 at 215.)  She lived in fear and thought he would eventually kill her.  (CR No. 257 at 216.)  His anger and violence kept her from trying to escape, and he convinced her that no one was looking for her by running online searches for her name and showing her that nothing came up.  (CR No. 257 at 216-17.)

## 2.    Investigators find M. at Boukamp's lake house, and a grand jury ultimately charges him with 16 counts.

Despite Boukamp's claims, M.'s family and law enforcement were actively searching for her.  Investigators were able to locate an e-mail address and cell phone number associated with one of Boukamp's online accounts and used that information to pinpoint Boukamp's location.  (CR No. 257 at 91-102.)   Nine days after Boukamp and

3

M. left Lubbock, law enforcement ordered them out of Boukamp's lake house.  (CR No. 257 at 116-17.)  Officers identified M. and noted that she looked "[t]errified."  (CR No. 257 at 117.)  M. was taken to a local hospital and evaluated.  (CR No. 257 at 155.)  The sexual-assault nurse testified that that M. was "very nervous and afraid."  (CR No. 257 at 156.)  M. described some of the sexual trauma she had suffered, (CR No. 257 at 161-63), and vaginal swabs collected from M. confirmed the presence of Boukamp's DNA, (CR No. 257 at 105, 110-12, 164-69).

A grand jury indicted Boukamp based on these events.  (CR No. 6.)  Ultimately, the indictment was superseded such that Boukamp faced 16 charges: (1) one count of transporting a minor to engage in criminal sexual conduct, in violation of 18 U.S.C. § 2423(a) (Count One); (2) one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count Two); (3) one count of enticement/attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Count Three); (4) two counts of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b) (Counts Four & Six); (5) one count of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2) & 2261(b)(4) (Count Five); and (6) ten counts of production/attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) (Counts Seven through Sixteen).  (CR No. 89.)

**3.    Boukamp's attorneys move to continue trial to have Boukamp's competency to stand trial evaluated.**

Boukamp retained the services of two attorneys to represent him throughout the proceedings, local attorney David Guinn, and out-of-state-counsel Mark Mahoney.  (CR

Nos. 8 & 53.)  About one month before Boukamp's trial was originally set to begin, Guinn moved for continuance based on "unearthing a significant mental health issue." (CR No. 15 at 1.)  The Court granted trial counsel's first requested trial continuance, as well as trial counsel's second motion for continuance to obtain a psychiatric evaluation of Boukamp.  (CR Nos. 16, 17.)  Just over a week before the new trial date, trial counsel filed a third motion for continuance and, when that was denied, (CR No. 47), a motion for reconsideration of the Court's denial.  (CR No. 60.)  On the Thursday before trial, trial counsel moved for a competency hearing.  (CR No. 78.)  The next day, the government likewise moved to have Boukamp evaluated for competency, noting that Boukamp had reached the low standard for an examination.  (CR No. 84.)

In the Court's order denying Boukamp's motion for reconsideration of a trial continuance, the Court noted the "suspect timing, lack of substance, and conclusory nature of the allegations" raised by Boukamp's attorneys.  (CR No. 85 at 8.)  But, noting the government's lack of opposition to a competency examination, granted the motion and vacated the trial setting.  (CR Nos. 86-87.)   In December 2021, Boukamp terminated Guinn as counsel, and local attorneys Laurie L. Key and Kristen Ayers appeared as local counsel for Boukamp, with Mahoney remaining on the case.  (CR Nos. 92-93.)

Boukamp's competency hearing was originally set in March 2022, but Mahoney moved to continue that date based largely on issues with coordinating expert witnesses. (CR No. 99.)  The Court obliged, and the competency hearing was reset to May 2022. (CR No. 100.)  Days before the hearing, Mahoney again moved for continuance, claiming the same expert witness travel concerns he cited previously, and that local counsel Key

and Ayers had withdrawn from the case. (CR No. 116.) This time, the Court denied the motion. (CR No. 118.) The Court held Boukamp's competency hearing in May of 2022 as scheduled, and after a full day of testimony and argument, found Boukamp competent to stand trial. (CR No. 221 at 258-59.)

The day after the Court found Boukamp competent, Boukamp was arraigned on the Second Superseding Indictment, which had been filed months before when Boukamp was being evaluated. (CR No. 222; *see* CR No. 89.) Before the rearraignment hearing even started, though, Boukamp said he wanted to proceed pro se, (CR No. 222 at 3), and so—after a *Faretta* hearing—the magistrate judge found that he had "knowingly and voluntarily waived his right to counsel" and appointed stand-by counsel to assist him, (CR No. 222 at 46). The Court confirmed the magistrate judge's finding. (CR No. 130.)

When Boukamp decided to proceed pro se, his trial was set to begin just over a month later on June 6, 2022. (CR No. 222 at 47.) And to assist Boukamp with discovery and other issues, the Court entered an order requiring that the government provide Boukamp with discovery and ensure that Boukamp had sufficient time to review the discovery on a computer. (CR No. 130.) The government complied and updated the court about Boukamp's preparations. (CR Nos. 139, 154, 194, 205, 224.) The government also received a partial trial continuance until June 14, 2022, given vacation plans and to ensure sufficient time for discovery-related issues. (CR Nos. 129, 132.)

Despite all this, Boukamp still wanted more time, and he filed a pro se motion to continue on May 16, 2022 (among other motions). (CR No. 141.) The Court denied that request. (CR No. 144.) In doing so, the court highlighted that it had already continued

Boukamp's trial six times and outlined the steps it had taken to ensure that Boukamp could prepare for trial. (*See* CR No. 144.) And while the Court refused to continue the trial date, it later extended the pretrial deadlines. (CR No. 162.)

### 4. A jury convicts Boukamp on all 16 counts and this Court sentences him to life imprisonment.

After a three-day trial, the jury returned a verdict in just over an hour convicting Boukamp of all 16 counts. (CR No. 258 at 130-32.) Boukamp's initial presentence report (PSR) gave him a total offense level of 50, which the guidelines reduced to the maximum level of 43. (PSR ¶¶ 235, 237.) Although Boukamp had a Criminal History Category of I, he still faced an advisory range of Life. (PSR ¶ 294.)

Boukamp (through counsel) filed various objections to the PSR, (CR No. 267), but the probation officer supported the PSR as written, (CR No. 269-1). The government then learned that Boukamp apparently had formulated a plan to escape from prison by enlisting his brother's help. (CR No. 274 at 2.) Based on Boukamp's escape efforts, the probation officer issued a Second Addendum, which added a two-level obstruction enhancement. (CR No. 275-1.)[3]

At sentencing, the Court overruled Boukamp's objections to the PSR, and it confirmed that he faced a guidelines range of Life. (CR No. 291 at 19-21.) The Court then heard testimony from Boukamp's father, brother, and sister, which mostly focused on why Boukamp's autism was a mitigating factor, and asked the Court to give Boukamp

---

[3] While this update increased Boukamp's total offense level to 52, it remained unchanged for guidelines purposes (capped at 43). (CR No. 275-1 at 2-3; PSR ¶ 237.)

a chance to be released and receive the help necessary to heal and function in society. (CR No. 291 at 21-28.)  Boukamp's counsel likewise focused on the mitigating effect of Boukamp's recent autism diagnosis, and he specifically asked for a 30-year sentence. (CR No. 291 at 28-31 (arguing that his "mental and emotional age . . . is even less than his 20 years of age"); *see also* CR No. 273 (sentencing memorandum).)

In response, the government did not dispute that Boukamp had autism, but it argued that "his actions are above and beyond anything that that condition could have caused" because they were so "horrific and deplorable."  (CR No. 291 at 36.)  And it asserted that—given the heinous nature of Boukamp's crimes and their effect on M.'s life, his lack of remorse and respect for the law, his efforts to escape from custody, and the need to protect the public—a guidelines sentence of Life was warranted.  (CR No. 291 at 36-47.)

The Court considered Boukamp's autism in its Section 3553(a) analysis.  It recognized that his autism could "explain some things," but the Court made clear that this diagnosis "cannot explain what [Boukamp] did to [M.], [his] demonstrated exhibited interest in child pornography and [his] willingness to reach out to other girls to try to bully them into giving [him] what [he] want[ed]."  (CR No. 291 at 52.)  After considering the Section 3553 factors in depth, (CR No. 291 at 47-54), the Court imposed a Life sentence, which consisted of: (1) Life on Counts One and Three; (2) 360 months on Counts Two; (3) 240 months on Counts Four and Six; (4) 180 months on Count Five; and

(5) 360 months on Counts Seven to Sixteen—all to run concurrently, (CR No. 291 at

54).[4]

## ARGUMENT AND AUTHORITIES

### Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set

aside, or correct his conviction or sentence if it was imposed in violation of the

Constitution or the laws of the United States.  Section 2255 provides four grounds for

relief:  "(1) the sentence was imposed in violation of the Constitution or laws of the

United States; (2) the court was without jurisdiction to impose the sentence; (3) the

sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise

subject to collateral attack.'"  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996)

(citation omitted).  The Court is entitled to presume that a defendant who has been

convicted and has waived his right to appeal "stands fairly and finally convicted."  *United

States v. Frady*, 456 U.S. 152, 164 (1982).  A Section 2255 motion, however, "may not

do service for an appeal."  *Id.* at 165.

Ineffective-assistance-of-counsel claims are constitutional claims recognized

under Section 2255.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Such claims

require the prisoner to prove that his attorney's performance was constitutionally

deficient and that he suffered actual prejudice as a result.  *Strickland v. Washington*, 466

U.S. 668, 687 (1984).  The Supreme Court has repeatedly "made clear that the purpose of

---

[4] To the extent Boukamp is ever released, the Court imposed a lifetime term of supervised release.  (ROA.2130.)

the effective assistance guarantee of the Sixth Amendment is not to improve the quality

of legal representation" but only to "ensure that criminal defendants receive a fair trial."

*Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotations and citations omitted).

Accordingly, "the benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct *so undermined* the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." *Id.* (emphasis in original).

"A fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight," and "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'"

*Strickland*, 466 U.S. at 689.

     To prove prejudice, a defendant must establish "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694.  This showing "requires a 'substantial,' not just 'conceivable'

likelihood of a different result." *Cullen*, 563 U.S. at 189 (citing *Harrington v. Richter*,

562 U.S. 86, 112 (2011)).

     Simply making "conclusory allegations" of deficient performance and prejudice is

insufficient to meet the *Strickland* test.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.

2000).  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*,

559 U.S. 356, 371 (2010).  An ineffective assistance claim fails if the prisoner does not

satisfy either the deficient-performance or the prejudice prongs. *United States v. Stewart*,

207 F.3d 750, 751 (5th Cir. 2000).  This Court need not address both components if there is an insufficient showing on one.  *Id.*

Further, Section 2255 motions do not automatically require a hearing.  *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings.  "When the files and records of a case make manifest the lack of merit of a section 2255 claim, the trial court is not required to hold an evidentiary hearing."  *Hughes*, 635 F.2d at 451.  A prisoner is not entitled to an evidentiary hearing on his Section 2255 motion unless he "presents independent indicia of the likely merit of his allegations."  *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013).

### Discussion

### 1.    Boukamp fails to show deficient performance or prejudice in claiming that his retained counsel was ineffective for failing to interview the victim before trial.  (Ground One)

Boukamp alleges that he received constitutionally ineffective assistance of counsel from his second hired attorney, David Guinn, because Guinn allegedly failed to "interview and investigate" M. before trial.  Because the record confirms that M. was unwilling to speak with Boukamp or defense counsel before trial, Guinn was not ineffective for pursuing a fruitless strategy, and Boukamp cannot show prejudice.

### A.    Boukamp fails to show deficient performance.

Boukamp's assertion that Guinn performed deficiently by failing to investigate and interview M. does not overcome the strong presumption that counsel's performance was reasonable.  *See Richter,* 562 U.S. at 109 (citing *Yarborough v. Gentry*, 540 U.S. 1, 8

11

(2003), for the "strong presumption" that "counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"). Attorneys are under no duty to pursue an investigation that would be fruitless. *Id*. at 108 (citing *Strickland*, 466 U.S. at 691). Instead, counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Trottie v. Stephens*, 720 F.3d 231, 242–43 (5th Cir. 2013) (quoting *Richter*, at 108). Such a strategy is not constitutionally ineffective "unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, at 110; *see also Martin v. United States*, No. 3:17-CV-2158-M-BN, 2019 WL 3976272, at *3 (N.D. Tex. June 28, 2019) (Horan, M.J.), *report and recommendation adopted,* No. 3:17-CV-2158-M, 2019 WL 3975402 (N.D. Tex. Aug. 21, 2019).

Here, there is no dispute that Boukamp was fixated on speaking with M. before trial and that he believed that he could make the case go away in one 30-minute conversation with M. (*See, e.g.*, CR No. 221 at 119.) But the record shows that this belief—like many of Boukamp's beliefs—was untethered from reality.[5] There is no indication in the record that M. would have been willing to speak with Boukamp or with

---

[5] The record also shows—contrary to Boukamp's portrayal of the events—that he manipulated, harassed, threatened, and abused M. throughout the course of the interactions, and that M. continued to interact with him out of fear, not love. (*See* CR No. 257 at 216.)

defense counsel, and every indication is that she would not have. Indeed, throughout his time of self-representation, Boukamp was made aware that M. and her father were unwilling to speak to him. In one notice of conference, the government noted that Boukamp had requested the government facilitate a meeting with M. and her father, and the government denied the request. (CR No. 139 at 5.) At the pretrial hearing, Boukamp (representing himself) asked the Court to facilitate a meeting with M., which the Court also denied. (CR No. 254 at 97-98.)[6] In response, the government noted that Boukamp's standby counsel had also asked the government if their investigator "or somebody" could speak with M., and the government told counsel that M.'s father was not interested in either of them speaking with Boukamp. (CR No. 254 at 98.) Thus, contrary to his assertions, Boukamp had several indications prior to the start of his trial that 1) a pretrial meeting with M. was unlikely; and 2) M. did not want to speak with him.[7] As such, even if Guinn *had* attempted to interview M., Boukamp cannot show that the attempt would have been successful, especially in light of the fact that both Boukamp himself and his standby counsel were unsuccessful in their attempts to meet with M. before trial.[8]

---

[6] (*See also* CR No. 176 (denying Boukamp's Ex Parte Motion to Meet with Witnesses because "the Court has no authority to order third parties to meet with a defendant in a setting other than at a hearing or at trial.").)

[7] Boukamp's own words further indicate he knew that a meeting with M. was unlikely. At the competency hearing, Dr. Kellaher testified that Boukamp likely believed that trial would be his last chance to see M., and that he wanted to maximize his time with her. (CR No. 221 at 141-42; *see also* CR No. 221 at 81 (noting Boukamp's fixation on going to trial and being able to confront M.).) And before trial, Boukamp agreed with the Court that M. and her father are "likely to see this case very differently than [him]." (CR No. 254 at 36-37.) Inherent in both of those theories is an understanding that a pretrial meeting with M. may not materialize, and that trial may be his only chance to speak with M. one last time.

[8] It is also highly unlikely that—given the extensive testimony concerning Boukamp's "rigid and inflexible thinking," (CR No. 207 at 8), and his "fixed and unchanging ideas," (CR No. 207 at 5)—he would have even accepted Guinn's conclusion that M. did not love him, further dooming his claim. (*See also* CR No. 207 at 8 (noting that when Boukamp "is frustrated, he can become more rigid in his thinking, and less inclined to consider the viewpoint of others.").

Given all this, it was not unreasonable for Guinn to pursue other matters pre-trial rather than wasting limited time and resources on futile attempts to set up a meeting with M. *See Richter*, at 108.  Far from performing unreasonably, Guinn strategically focused his efforts on other pretrial matters such as reviewing the indictment and a proposed jury charge with Boukamp, (CR No. 78 at 4), discussing the possibility of a plea agreement, (CR No. 78 at 5), and reviewing the evidence with Boukamp, (CR No. 78 at 6).  On this record, Boukamp fails to show deficient performance.

### B.    Boukamp fails to show prejudice.

Boukamp likewise fails to show any prejudice whatsoever, as he must to prevail on his claim.  *Strickland*, 466 U.S. at 693.  Boukamp claims that if his counsel had met with M. and informed Boukamp that she no longer loved him, he would have plead guilty instead of going to trial, (CV No. 1-1 at 1, 13), but the record belies that unsupported post-hoc assertion.

 In the context of Boukamp's claims, to prove prejudice Boukamp must show a reasonable probability that he would have accepted the government's plea offer and received a lesser sentence had Guinn successfully interviewed M. and then told Boukamp that she no longer loved him.  *See Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."); *United States v. Cisneros*, No. 22-40102, 2023 WL 8433978, at *4 (5th Cir. Dec. 5, 2023) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164

(2012)).  Courts may consider contemporaneous evidence in determining whether a defendant would have accepted a plea agreement.  *Cisneros*, 2023 WL 8433978, at *5.

Boukamp claims, without citation to the record, that "he has previously stated he would not fight his case if he knew M. did not want to be in a relationship with him." (CV No. 1-1 at 13-14.)  Yet, the record confirms that (1) Boukamp was aware that M. did not want to speak with him; (2) Boukamp did not believe he did anything wrong; and that (3) Boukamp was dead set on going to trial.  Thus, he cannot show a reasonable probability that—but for Guinn's alleged failure to investigate and interview M.—he would have plead guilty.

First, as discussed above, all record evidence points to the same conclusion: M. was not willing, and could not be compelled, to meet with Boukamp or his counsel before trial.  Thus, Boukamp cannot show prejudice as a result of Guinn's failure to arrange an interview that, simply put, was never going to happen.  And as the Court noted at Boukamp's pretrial hearing, M. was free to speak with Boukamp, but she could not be compelled to do so against her will.  (CR No. 254 at 97-98); *see United States v. Soape,* 169 F.3d 257, 271 n. 9 (5th Cir. 1999), *cert. denied,* 527 U.S. 1011 (1999) (noting that a trial court may not compel government witness to speak to defense counsel); *United States v. Caldwell,* 750 F.2d 341, 347 (5th Cir. 1984), *cert. denied,* 471 U.S. 1007, 105 S.Ct. 1873, 85 L.Ed.2d 166 (1985) (noting that a defendant's constitutional right of access to witnesses "exists co-equally" with witness' right to refuse to say anything); *Brigham v. Cockrell*, No. 3-01-CV-2013-P, 2002 WL 1776933, at *3 (N.D. Tex. July 29, 2002) (same).

Second, from the time of his arrest through sentencing, Boukamp persisted in his belief that his conduct should not be illegal, which weighs against a finding that he would have plead guilty but for Guinn's performance.  *See Navarrette v. United States*, No. MO:11-CV-00073, 2013 WL 12351153, at *3 (W.D. Tex. Dec. 13, 2013) (proclaiming innocence from the beginning of the plea process weighs against a finding that a defendant would have plead guilty but for counsel's performance).  Boukamp made it well-known that he believed that what he did should not be illegal, explaining to his attorneys—*while under indictment*—his belief that he and M. were "soulmates" and that because "Texas allows for marriage for those who have attained fourteen years, he wishes to propose to [M.] and give her a better life in Michigan."  (CR No. 78 at 6.)  He filed motions with the Court based on the same theory.  (See CR Nos. 172-73.)[9]  And he made the same argument to the jury during closing arguments:

> And it's a shame that the government is trying to portray this as a man raping a child, because I was no man, by the federal government's own standards.  I can't drink.  I can't smoke.  That's federal.  But apparently I can rape a child who is a teenage girl, when we were teenagers at the exact time.  To me, that's absurd.

(CR No. 258 at 118; *see also* CR No. 291 at 46 (noting that Boukamp has stated that "[h]e likes teenage girls and he always will and he does not care about the laws of this country.").)  Boukamp's memorialized belief that his actions were blameless undermine his late-made claim that he would have plead guilty.

---

[9] ("This prosecution is just state sanctioned bigotry . . . My sexuality, something I am unable to have control over, a part of what makes me who I am, is being ridiculed, punished, and snuffed out by a government acting under the color of law."); ("I need no judge or jury to justify myself to.  I am who I am.  . . . I am traditional marriage and normalcy.  I am the bedrock of the human experience.").

Third, Boukamp was determined to take his case to trial and consistently rejected the notion of entering into any type of plea agreement with the government. (*See* CR No. 221 at 81 (noting Boukamp's "fixation of going to trial and being able to confront" M.); CR No. 78 at 5 (stating that Boukamp "brushed [] aside" the idea of a plea offer and declared that "he'd rather die than go to prison."); CR No. 207 at 7 (Boukamp stated that "a 15-to-30-year sentence would still be like life in prison, therefore, he would not want to take that"); CR No. 221 at 29 (highlighting Boukamp's reluctance to accept a plea agreement with an appeal waiver).) And, Boukamp remained intent on going to trial despite acknowledging that the government's case against him was strong.[10]

In addition to his unwillingness to plead guilty, Boukamp also attempted to escape from custody after trial but before sentencing. (*See* CR No. 275-1 at 1-2 (applying an obstruction-of-justice enhancement based on a letter from Boukamp to his brother soliciting help in escaping from jail).) Attempting escape from custody "is not the action[] of a man who is considering cooperating with the Government." *Cisneros*, 2023 WL 8433978, at *6. Indeed, it is impossible to reconcile Boukamp's persistent rejection of a plea offer and his attempt to escape custody with his conclusory assertion that he would have plead guilty if only his attorney told him that M. did not love him.

---

[10] (*See* CR No. 207 at 21 (stating that Boukamp knew the government had an "open-shut" case against him); CR No. 221 at 74, 80 (noting that Boukamp knew his chances at trial were not good, but that he did not want to plea because it could foreclose the possibility of a sentence reform in the future); CR No. 221 at 133 (reporting that Boukamp knew the case against him is very strong, and that he faced a likely sentence of life imprisonment without the possibility of parole); CR No. 221 at 225 (acknowledging the case against Boukamp was very strong and he had little hope of prevailing).)

In sum, Boukamp fails to show either deficient performance or prejudice in Guinn's alleged failure to investigate and interview M. The record evidence confirms that M. was not willing to meet with Boukamp or his counsel before trial, so any attempt to seek out such a meeting would have been unsuccessful. Instead, trial counsel reasonably focused his pretrial efforts on other matters rather than pursuing a futile investigation. Moreover, Boukamp cannot demonstrate prejudice because the record soundly confirms his insistence on going to trial and his persistent belief that he did not do anything wrong, such that he cannot show a reasonable probability that had the improbable pretrial meeting with M. occurred, he would have plead guilty rather than proceed to trial. Therefore, this Court can easily deny this ineffectiveness claim.

**2.    Boukamp fails to show that his trial counsel performed deficiently by requesting trial continuances and a competency hearing or that those actions prejudiced him. (Ground Two)**

Boukamp claims that his counsel's decisions to pursue a competency hearing and motions to continue trial were unreasonable and prejudiced him by leading to additional charges. But his trial counsel's performance does not evince ineffective assistance; if anything, it supports counsel's competence, and Boukamp cannot show prejudice as a result.

It is well-established that an incompetent person cannot be put on trial. *See Drope v. Missouri*, 420 U.S. 162, 171 (1975). While a mental illness does not necessarily preclude one's ability to stand trial, *Mays v. Stephens*, 757 F.3d 211, 216 (5th Cir. 2014), if a defendant has a history of mental illness, defense counsel has a duty to investigate or request a hearing on competency. *See Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir.

18

1990) (finding deficient performance in failing to seek a competency examination where defense attorney knew that defendant had a long history of diagnosed mental and substance abuse problems and had been institutionalized).  Another well-accepted principle is that the government may supersede an indictment up until the time of trial. *See United States v. Millet,* 559 F.2d 253, 257–58 (5th Cir. 1977) (affirming denial of motion to dismiss superseding indictment returned six days before trial).  Even "threats regarding additional charges or enhanced penalties are accepted practices in plea negotiations."  *United States v. Felice*, 272 F. App'x 393, 396 (5th Cir. 2008).

Here, Boukamp claims that Guinn and Mahoney were ineffective in seeking trial continuances and pursuing competency proceedings because, he alleges, those delays resulted in additional charges against Boukamp.  To the contrary, counsel had legitimate reservations about Boukamp's ability to assist in his defense and had a duty to raise the issue with the Court.  *See Bouchillon v. Collins*, 907 F.2d at 597.  Within one month of being retained to represent Boukamp, Guinn moved the Court for a trial continuance, stating that he had unearthed a "significant mental health issue," (CR No. 15), and similar filings from defense counsel continued before ultimately culminating in the motion for competency evaluation.  (*See* CR No. 78.)  Indeed, the government asked to have Boukamp evaluated as well.  (CR No. 84.)  And while Boukamp now claims that the competency proceedings were "doomed from the start", (CV No. 1-1 at 15)—the record refutes that claim.  The dispute over Boukamp's competency took up an entire day of expert testimony and argument before trial, and it formed the basis of a contested issue on direct appeal.  The Fifth Circuit's discussion of the competency issue alone spanned five

19

pages of the Court's opinion.  *See Boukamp*, 105 F.4th at 729-34.  Counsel presented arguments about Boukamp's unwillingness—likely because of his autism—to assist counsel in his defense that, although ultimately unsuccessful, were not without basis. He cannot show deficient performance as a result.

In any event, Boukamp also does not point to any facts or evidence to show a causal connection between the trial delays and competency proceedings and the Second Superseding Indictment.  While it is true that Guinn and Mahoney sought several continuances of the trial date, Boukamp, too, sought several continuances based on the volume of the discovery and the scope of the case once he represented himself.  (CR Nos. 143, 161.)  So did the government.  (CR No. 129 (requesting a continuance to get the voluminous discovery to Boukamp and allow him time to review it).)  And, unlike in cases where the filing of additional charges is litigated as retributive,[11] Boukamp makes no argument that the government brought additional charges *because* his pretrial counsel initiated competency proceedings.  He simply complains of the timing, but even that argument lacks merit where the Second Superseding Indictment, (CR No. 89 (Oct. 13, 2021), was filed six months after the first trial continuance, (CR No. 15 (Apr. 19, 2021), and seven months before his competency hearing, (CR No. 221 (May 3, 2022)).

In short, Boukamp's counsel were reasonably concerned about his ability to participate in his own trial defense and their decision to delay trial and seek a competency evaluation did not constitute deficient performance.  Furthermore, Boukamp fails to

---

[11] *See, e.g., Frank v. Blackburn*, 646 F.2d 873, 878-79 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

connect the pretrial delays and competency proceedings with the filing of the Second Superseding Indictment.  Thus, Boukamp cannot show that he was prejudiced by Guinn and Mahoney's allegedly deficient performance.   He cannot meet either *Strickland* prong as a result.

### 3.    Counsel did not perform deficiently at sentencing by failing to advocate for the likelihood of Boukamp's rehabilitation, nor can Boukamp show prejudice because of the alleged failure.  (Ground Three)

Finally, Boukamp alleges that sentencing counsel performed deficiently by failing to argue the likelihood of his rehabilitation.  His only basis for that argument, however, is that individuals with autism in general are treatable.  He does not, and cannot, point to any specific evidence that sentencing counsel could have relied on to overcome his well-documented belief that he did not do anything wrong, and his declaration that he will "never change."  Thus, sentencing counsel did not perform deficiently by failing to make an argument it had no basis for, and Boukamp cannot show prejudice as a result.

In assessing counsel's performance, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland*, 466 U.S. at 689.  As such, Boukamp must show that his counsel's conduct cannot be considered "sound trial strategy."  *Id.* (internal quotation marks omitted).  He fails to meet this burden.

While there was evidence before the Court that persons with autism generally are treatable in relation to sexual offenses, there is no basis in the record to suggest that Boukamp showed any signs of potential for rehabilitation.  Quite the opposite, this Court explicitly stated that it saw no signs of atonement, acceptance of responsibility, or

remorse from Boukamp: "Because there is no sign of potential acceptance, rehabilitation, I have to consider the dangerousness that you pose to other people and it's a significant one.  It's a very, very significant one."  (CR No. 291 at 53.)  The Court's conclusion finds support in multiple statements by Boukamp over the course of the proceedings declaring that what he did should not be illegal, and that he would never change.  (CR No. 291 at 53.)  Thus, sentencing counsel reached the imminently reasonable conclusion that he could not make a good-faith argument regarding Boukamp's potential for rehabilitation, with Boukamp's insistence on never-changing so well-documented.  Boukamp has not shown deficient performance as a result.

In terms of prejudice, Boukamp first claims that he was prejudiced because there is a reasonable probability that the result of the proceeding would have been different had sentencing counsel made a likelihood-for-rehabilitation argument.  (CV No. 1-1 at 18-19.)  Not so.  As discussed, Boukamp gave sentencing counsel very little to work with in terms of his likelihood of rehabilitation.  And the aggravating factors present—including Boukamp's insistence that his sexual misconduct and sexual interest in children was not wrong and that he would never change—easily outweighed any potential mitigating factors or the remote possibility that, with the willingness and proper treatment, Boukamp could overcome his sexual misconduct.  *See Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 481 (5th Cir. 2024) (noting that given the overwhelming aggravating factors, "there is no reasonable probability" that any omitted mitigating evidence would have outweighed the aggravating evidence).  After all, M. was not Boukamp's only victim, and he proudly proclaimed his interest in young girls.  (*See* CR No. 291 at 46.)  And the

Court addressed each of those countervailing concerns when it imposed its sentence "in light of the violence that was repeatedly inflicted upon [M.] in part, in light of the demonstrated long-term interest in teenage girls and child pornography and willing[ness] to act on that and the completing unwillingness to show any interest in altering behavior and for protection of the public." (CR No. 291 at 55; CR No. 291 at 53 ("Because there is no sign of potential acceptance, rehabilitation, I have to consider the dangerousness that you pose to other people and it's a significant one. It's a very, very significant one.").

Boukamp also claims that if sentencing counsel had preserved the issue for appellate review, then he could have prevailed under a more deferential standard of review on direct appeal. This argument, too, misses the mark. Boukamp relies solely on *Roper v. Simmons*, 543 U.S. 551 (2005), and its progeny, to argue that sentencing counsel's failure to raise his potential for rehabilitation was deficient performance. But, as the Fifth Circuit noted, "Boukamp was an adult—not a juvenile—when he committed his crimes," and the Fifth Circuit and its sister circuits "have consistently rejected attempts" to apply *Roper* "to adults whose 'mental age' is that of a juvenile." *Boukamp*, at 737. Thus, even if his sentencing counsel had raised the *Roper* line of cases at sentencing as they related to Boukamp's potential for rehabilitation, the Fifth Circuit has thus far rejected *Roper*'s application to adults, and such arguments would have been unsuccessful. Plus, any potential for rehabilitation in adults with autism generally cannot overcome Boukamp's rigid and well-documented belief that his actions were not wrong

23

and his commitment to never changing even if *Roper* were applied to him.  Boukamp

fails to show prejudice as a result.

## **CONCLUSION**

The motion should be denied.

Respectfully submitted,

Ryan Raybould
United States Attorney

*s/ Lauren C. Murphree*
Lauren C. Murphree
Assistant United States Attorney
Texas Bar No. 24085059
1200 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: (806) 472-7322
Lauren.murphree@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on January 29, 2026, I filed this response with the clerk of court for

the U.S. District Court, Northern District of Texas, which generated service to counsel of

record for Boukamp.

*s/ Lauren C. Murphree*
Lauren C. Murphree
Assistant United States Attorney